PENNSYLVANIA CO. FOR INSURANCE ON LIVES AND GRANTING ANNUITIES v. AACHEN & MUNICH FIRE INS. CO.

(District Court, E. D. Pensylvania.    April 14, 1919.)

No. 5700.

1. INSURANCE ⬥⇒311(3)—MORTGAGEE CLAUSE—FAILURE OF INSURED TO FULLY INSURE.

Provision of mortgagee clause that the insurance as to the interest of the mortgagee shall not be invalidated by any act or neglect of the mortgagor or owner does not protect the mortgagee against neglect of duty with which the insurer has no concern, or which does not invalidate the policy, and cannot be construed to relieve the mortgagee of the effect of insured's failure, in the first instance, to insure the property to its full value, so that, where fire policy provided insurer should be liable for no greater proportion of loss than amount insured bore to 100 per cent. of actual cash value of property when loss should happen, assignee of mortgage, to whom, by addition to policy, loss was made payable, as its interest might appear, could recover from insurer, for a loss, such proportion only.

2. INSURANCE ⬥⇒539(5)—FIRE INSURANCE—PROOF OF LOSS—NEGLECT OF MORTGAGOR.

Failure of insured to make proof of loss under fire policy within 60 days after fire was neglect not invalidating insurance as to mortgagee or its assignee, an addition to the policy providing that insurance as to interest of mortgagee should not be invalidated by any act or neglect of mortgagor.

---

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. INSURANCE ⊚⇒537—FIRE INSURANCE—PROOF OF LOSS—ASSIGNEE OF MORT-
    GAGE.
        Where fire policy provided proof of loss might be furnished by mort-
    gagee of premises within 60 days after failure on part of insured, who
    also had 60 days to make proof, and insured, not making proof within
    60 days allowed, did so at end of 80 days, assignee of mortgage could
    take advantage of such furnishing of proof of loss, and was not required
    to do so himself as a condition to holding the insurer.

4. INSURANCE ⊚⇒578—FIRE INSURANCE—REFUSAL TO HAVE LOSS APPRAISED
    —NEGLECT OF MORTGAGOR.
        Failure or refusal of owner and mortgagor of premises insured against
    fire to proceed with appraisal of loss as provided by policy, which, by
    an addition, also provided insurance as to interest of mortgagee should
    not be invalidated by any act or neglect of mortgagor' or owner, was
    not an act or neglect invalidating policy as to mortgagee or its assignee.

5. INSURANCE ⊚⇒568, 576(1)—FIRE INSURANCE—WAIVER OF APPRAISAL.
        If a fire insurer desired to hold the mortgagee of the premises or its
    assignee to an appraisement clause in the policy, it was entitled to do so
    by written demand; but, no such demand having been made, the ap-
    praisement must be held to have been waived against the mortgagee or
    its assignee.

6. INSURANCE ⊚⇒606(2)—FIRE INSURANCE—RIGHT OF SUBROGATION.
        Under the subrogation clause of a fire policy, the insurer is not enti-
    tled to an assignment of the mortgage on the property, held by an
    assignee, where it has neither tendered nor paid any amount to the as-
    signee of the mortgage.

At Law. Action by the Pennsylvania Company for Insurance on
Lives and Granting Annuities, trustee for M. Lilly Beale under the
will of Clement B. Grubb, deceased, against the Aachen & Munich
Fire Insurance Company. On rule for judgment for want of sufficient
affidavit of defense. Rule made absolute.

Stern & Wolf, of Philadelphia, Pa., for plaintiff.
Horace M. Schell, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The plaintiff sues upon a policy of
fire insurance issued by the defendant to Hortense L. Becker for $3,-
500. The plaintiff was the holder by assignment of a mortgage for
$4,000 upon the premises, and the policy was transferred to it on Sep-
tember 19, 1917, at which date there was added to the policy what is
known as the standard mortgagee clause, which provided that the loss
be payable to the plaintiff "as assignee of mortgagee, as interest may
appear, and this insurance, as to the interest of the mortgagee only
therein, shall not be invalidated by any act or neglect of the mortga-
gor or owner of the within described property."

On October 17, 1917, the insured premises were damaged by fire
to an amount admitted by the affidavit of defense to be $3,425. Proof
of loss, as provided by the policy, was not filed by the insured within
60 days from the date of the fire, viz., by December 15, 1917, but
proof of loss in proper form by the assured, Hortense L. Becker, was
filed with the defendant on January 5, 1918.

The affidavit of defense sets up the following defenses:

(1) That the policy contains what is known as the "100 per cent."
insurance clause, by which it is "made a condition of this contract that

this company shall be liable for no greater proportion of any loss than the amount hereby insured bears to 100 per cent. of the actual cash value of the property described herein at the time when such loss shall happen."

The defendant avers that the actual cash value of the property at the time of the fire was the sum of $12,000, that the loss did not exceed the sum of $3,425, and that therefore the total amount for which the defendant would be liable, if liable at all, would not exceed $7/24$ of the actual loss, or $990.07.

(2) That the defendant is not liable, because Hortense L. Becker, the insured, did not, in accordance with the terms of the policy, furnish a proof of loss within 60 days after the date of the fire; that as to the mortgagee the policy contained the following clause:

"Upon failure of the insured to render proof of loss, such mortgagee shall, as if named as insured hereunder, but within 60 days after such failure, render proof of loss, and shall be subject to the provisions hereof as to appraisal and time of payment and of bringing suit."

The defendant denies that the notice required by the policy of insurance was given to defendant, and hence the defendant is not liable.

(3) In a supplemental affidavit of defense, the defendant avers that it is not liable because the plaintiff failed to comply with the clause of the policy which is as follows:

"*Appraisal.*—In case the insured and this company shall fail to agree as to the amounts of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire, and, failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the county in which the property insured is located. The appraisers shall then appraise the loss and damage, stating separately sound value and loss or damage to each item, and, failing to agree, shall submit their differences only to the umpire. An award in writing so itemized, of any two, when filed with this company, shall determine the amount of sound value and loss or damage. Each appraiser shall be paid by the party selecting him, and the expenses of appraisal and umpire shall be paid by the parties equally."

The defendant avers that it demanded an appraisement, and an appraisement agreement was duly entered into between Hortense L. Becker, the insured, and the defendant; that an appraiser was appointed on behalf of the defendant, and one on behalf of the assured; that the appraiser appointed by the assured declined to accept as umpire any persons suggested by the appraiser appointed by the defendant; that the defendant thereupon presented its petition to the court of common pleas of Philadelphia county for the appointment of an umpire, and that thereupon the court appointed an umpire in the said matter, whereupon the appraiser appointed by the assured withdrew from the appraisal, and no appraisal has ever been made, and, as a consequence thereof, this suit is prematurely brought, and the defendant is not liable.

As to the first defense, it is contended by the plaintiff that the failure to cause the property to be insured to its alleged full value of $12,000 is expressly excepted as a defense against the mortgagee by the

provisions of the mortgagee clause that the insurance as to the interest of the mortgagee shall not be invalidated by any act or neglect of the mortgagor or owner.

The plaintiff relies upon a line of cases interpreting the standard mortgagee clause in fixing the liability of the insurer, as compared with "the old indorsement which made the mortgagee a simple appointee of the mortgagor, and put his indemnity at the risk of every act or neglect of the mortgagor that would avoid the original policy in his hands." Syndicate Insurance Co. v. Bohn, 65 Fed. 165, 12 C. C. A. 531, 27 L. R. A. 614 (C. C. A. 8th Circuit). In that case Judge Sanborn, in delivering the opinion of the court, said:

"Our conclusion is that the effect of the union mortgage clause, when attached to a policy of insurance running to the mortgagor, is to make a new and separate contract between the mortgagee and the insurance company, and to effect a separate insurance of the interest of the mortgagee dependent for its validity solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or committed prior or subsequent to the issue of the mortgagee clause."

In that case the mortgagee was held entitled to recover, even though the insured was not the sole and unconditional owner of the property when the policy was issued.

In the cases of Eddy v. L. A. Corporation, 143 N. Y. 311, 38 N. E. 307, 25 L. R. A. 686, Heilbrunn v. German Alliance Insurance Co., 140 App. Div. 557, 125 N. Y. Supp. 374 (affirmed 202 N. Y. 610, .95 N. E. 823), and Reed v. Fireman's Insurance Co., 81 N. J. Law, 523, 80 Atl. 462, 35 L. R. A. (N. S.) 343, acts or neglect of the insured were held not to invalidate the insurance as to the interest of the mortgagee.

In the Eddy Case it was held that the mortgagee was not affected by the fact that the insured, without permission of the company, had taken out additional insurance, the effect of which, as to the insured, was that the company was liable only pro rata with the other insurers.

In the Reed Case, it was held that the mortgagee was not affected by the failure of the insured to furnish proofs of loss or to submit to an appraisement.

In the Heilbrunn Case, it was held that the mortgagee need not allege that proofs of loss were furnished.

Those decisions were all based upon the ground stated by Judge Sanborn, that, under the standard mortgagee clause, a new and separate contract is made between the insurance company and the mortgagee, and that the interest of the owner and of the mortgagee are regarded as distinct subjects of insurance.

The plaintiff also cites Pennsylvania cases. In Southern Building & Loan Association v. Pennsylvania Fire Insurance Co., 23 Pa. Super. Ct. 88, a change of ownership of which the mortgagee was not shown to have had notice, although it invalidated the policy as to the insured, was held not to affect the mortgagee's right to recover.

In Ebensburg Building & Loan Association v. Westchester Fire Insurance Co., 28 Pa. Super. Ct. 341, it was held that a payment of the

amount of loss to the insured did not release the insurance company from liability to the mortgagee.

In Knights of Joseph Building & Loan Association v. Mechanics' Fire Insurance Co., 66 Pa. Super. Ct. 90, it was held that, while a change of ownership of the insured property invalidated the policy as to the insured, the liability to the mortgagee was not thereby affected.

The precise question now raised does not appear to have been heretofore decided. The line of cases of which those cited are examples is based upon some act or neglect which would invalidate the insurance as to the insured. The mortgagee clause provides that the loss or damage, if any, under this policy, shall be paid to the mortgagee, and, while it creates a new contract between the mortgagee and the insurance company, distinct from the contract between the insured and the company, in so far as is in the mortgagee clause provided, it must be construed with reference to the terms as to amount of loss recoverable agreed to in the policy under which the loss or damage made payable to the mortgagee arises. The policy was an existing contract between the insured and the insurer when the interest of the mortgagee arose. If, at the time the mortgagee's interest accrued, other insurance upon the property had been in effect, and the mortgagor or owner had neglected to keep alive that insurance thereafter, the question would be presented whether that was neglect, within the terms of the mortgagee clause, which would prevent the application of the 100 per cent. insurance clause as against the interest of the mortgagee. But it is not claimed that the property was at that time insured to its full value, or that any other insurance had been placed upon it. As I construe the mortgagee clause, it protects the interest of the mortgagee from being invalidated by any act which, as between the insurance company and the mortgagor, or owner, the latter could not do without invalidating the insurance, or from any neglect to do anything he should do to keep the insurance valid. Failure to carry other insurance does not invalidate the insurance, but the amount of insurance carried in proportion to the value of the property fixes the proportion of the loss recoverable. There was no agreement or duty which, as between the insurer and insured, required the insured to place other insurance upon the property. If failure to do so was neglect, it was neglect of a duty to the mortgagee, and must have arisen under the terms of the mortgage. The mortgagee clause was never intended to protect the mortgagee against neglect of a duty with which the insurance company had no concern.

The loss for which the company made itself liable under the mortgagee clause, as a new contract, was the loss arising under the policy to the owner, upon her property therein described, and that loss became payable to the mortgagee under the conditions named in the mortgagee clause, and it is liable to the mortgagee for no greater amount than its liability to the owner or mortgagor under the terms of the 100 per cent. clause. If this were not so, and the insurance were upon the mortgagee's interest, irrespective of the owner's property, then the mortgagee could recover only to the extent of its loss, and it would be incumbent upon it to prove its loss. It does not fol-

257 F.—13

low, because the loss of the owner of property of the value of $12,000 is $3,450, that the mortgagee has suffered any loss at all, for it still has its lien against the damaged property covered by its mortgage, and non constat that the remaining value of the property is not sufficient to pay the mortgage debt.   The effect of the plaintiff's contention would indirectly be to relieve the owner of payment of the mortgage debt to the extent of the entire damage to her property, and thus give her an advantage to which she is not entitled under the policy.

[1] It is concluded that the defendant is liable only in that proportion of the loss which the amount insured bears to the total value of the property as fixed by the company's liability to the insured at the time the mortgagee clause went into effect.

[2, 3] The question whether there is any liability on the part of the defendant depends upon the other two defenses.   The failure of the insured to make proof of loss within 60 days after the fire is without contradiction a neglect which does not invalidate the insurance as to the mortgagee.   As to the mortgagee, the policy provides that proof may be furnished by it within 60 days after such failure on the part of the insured.   The mortgagee, therefore, under the strict terms of the policy, had 120 days in which to make proof of loss.   At the end of 80 days the insured made proof of loss in proper form.   It is difficult to understand what more the defendant can reasonably demand. The object of the proof of loss is to give such notice to the insurer as will enable it promptly to make a survey of the insured property, determine the amount of the loss, determine whether it will restore the property, and otherwise protect itself in the premises.   While the policy requires that the "mortgagee shall, as if named as insured hereunder," render a proof of loss, it would be a hard and technical rule indeed which forbade it to take advantage of the proof of loss made by the insured within the time allowed to the mortgagee, when that proof was of equal value to the insurer as though made by the mortgagee.   That such proof may be taken advantage of by the mortgagee is held in Germania Fire Insurance Co. v. Bally (Ariz.) 173 Pac. 1052, and is in accord with sound policy and in harmony with the provisions of Act June 27, 1883 (P. L. 165).   See Stainer v. Insurance Co., 13 Pa. Super. Ct. 25.   It is held, therefore, that as to the mortgagee the proof of loss was made in time, and that it is entitled to avail itself of the proof made by the owner.

[4, 5] Upon the question of appraisement, the failure or refusal of the owner to proceed with the appraisal is clearly an act of neglect which does not invalidate the policy as to the mortgagee.   If the company desired to hold the mortgagee to the appraisement clause, it was entitled to do so, if it made written demand upon the mortgagee. No such demand having been made, it must be held to have been waived as against the mortgagee, and the failure of the insured to proceed with the appraisal does not, in my opinion, affect the company's liability to the mortgagee.

[6] The defendant is not entitled to an assignment of the mortgage under the subrogation clause, because it has neither tendered nor paid any amount to the plaintiff.   See Ebensburg Building & Loan Asso-

ciation v. Westchester Fire Insurance Co., 28 Pa. Super. Ct. 341; O'Neil v. Franklin Fire Insurance Co., 159 App. Div. 313, 145 N. Y. Supp. 432.

Rule absolute for $990.07, with interest from March 7, 1918.