## Winter v. Taylor, et al.

(Decided June 1, 1928.)

### Appeal from McCracken Circuit Court.

Landlord and Tenant.—Under lease providing that, if premises shall be destroyed by fire or other casualty, lessors shall be under no obligation to rebuild, and, if they elect not to rebuild, lease shall become void, but, if lessors elect to rebuild, rent reserved shall be suspended during rebuilding, but on conclusion of rebuilding shall at once begin again, held that, on substantial destruction of premises by fire, lessor was not obliged to rebuild, but was entitled to declare lease terminated; word "destroyed" in lease being used in same sense as in Ky. Stats., sec. 2297, in which it is construed to mean substantial damage.

C. C. GRASSHAM, W. A. BERRY and L. B. ALEXANDER for appellant.

J. D. MOCQUOT for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On July 3, 1919, the appellees, Mrs. Adine M. Taylor and her husband, J. Q. Taylor, leased to the appellant, W. H. Winter, for a term of ten years, with the privilege of 5 years additional, a building located at Fourth and Broadway, in Paducah, Ky., known as the Brookhill building. The annual rental was $3,000 per year, the lessee to pay all taxes assessed against the property and

to keep it in good repair. The lessee had the right of subleasing. The lease further provided:

"It is further understood and agreed that if said premises during the term of this contract, or any renewal thereof, shall be destroyed by fire or other casualty, then and in that event the first parties shall be under no obligation to rebuild the same, and if they shall elect to not rebuild said premises then this lease shall at once become null and void. Provided, however, if the first parties shall elect to rebuild said premises they may do so by restoring same to like condition as of the date this contract, and during the time of said rebuilding the rent reserved hereunder shall cease, but upon the conclusion of such rebuilding the rent reserved hereunder shall at once begin again."

The appellant entered into the possession of the demised premises and subleased it to various tenants; his profit on the transaction being the difference between the rent he paid his landlord and that which he collected from his subtenants. On March 28, 1926, a fire visited the Brookhill building, causing a great deal of damage. Whether this fire destroyed the building beyond the possibility of reasonable repair is in dispute. On March 29th, the appellees served a notice upon the appellant to the effect that they elected not to rebuild the premises, and therefore also elected to declare the lease thenceforth null and forfeited. On April 2d, the appellant served notice upon the appellees that he intended to repair the damage done by the fire and to charge the expense of such repair to the appellees, and that he in turn elected to renew the lease for the additional 5 years he had the privilege of doing under the lease. On the next day he served another notice upon the appellees, informing them of the cost of the repairs he proposed to do, and warning them that if they interfered with his possession of the demised premises, he would hold them liable for damages. He also tendered them a check for the April rent, which they declined to receive. Despite these notices, appellees did enter upon the demised premises, and remove what remained of the building after the fire. Appellant then brought this suit against the appellees for damages occasioned by his claimed breach on their part of the lease. At the close of all the evidence, the court peremptorily instructed the jury to find for the appellees,

and, from the judgment entered on that verdict, this appeal is prosecuted.

In the case of Nixon v. Gammon, 191 Ky. 175, 229 S. W. 75, we pointed out how at common law the landlord unless by his lease he expressly agreed to repair the demised premises or to restore them wholly or partially in case they were destroyed by fire was under no obligation to do so. We also stated how at common law it was the duty of the tenant, despite such destruction by fire, to pay the agreed rental for the term of the lease. We further remarked how section 2297 of the Statutes was passed to relieve the tenant from having to pay, in the absence of an express agreement to the contrary, the rent, if the demised premises were destroyed by fire. In the Nixon case, there had been a partial destruction of the premises by fire, and it was sought to throw the duty on the landlord of repairing or replacing the premises in the condition they were prior to the fire on account of a covenant in the lease by which the landlord agreed to stand the expense of needed ''extraordinary repairs.'' We declined to put such duty upon the landlord, holding that, as the lessor is under no general obligation to repair or replace the premises, his covenants to repair, if any are expressly made, must not be enlarged beyond their reasonable and fair intent, and that, as the building could not be made whole without rebuilding it wholly or substantially, he was under no obligation to do so, despite his covenant to make extraordinary repairs. In the lease contract under consideration here, there was no express obligation at all on the part of the landlord to do any repairing of any character or description, or to replace or rebuild the building if damaged or destroyed by fire. Appellant seeks to spell out such an agreement from the negative covenant which we have copied from the lease. But it is plain that this covenant only meant that, if the landlord of his own volition decided to rebuild or replace the premises destroyed by fire, then the tenant was not to be entirely discharged from the lease, as he would otherwise have been by section 2297 of the Statutes, but only to be discharged from having to pay rent while the building was being replaced. This covenant, however, did not put any duty on the part of the landlord to rebuild the premises unless he elected to do so. In Woodside, Agent, v. Talley, 135 Ga. 337, 69 S. E. 492, the tenant sued his landlord for damages on account of the landlord's failure to repair or restore the demised premises which had been

injured by fire. The lease, among other things, provided:

"That should the premises be destroyed or damaged by fire so as to be untenantable, the conditions of this lease shall cease, from the date of fire until the premises shall be restored to as good condition as they were in previous to the fire."

It was held that this provision imposed no duty on the lessor to restore, although it did relieve the lessee from having to pay rent until the restoration was had. Therefore, when the Brookhill building was damaged by the fire of March 28th, there was no obligation on the part of the appellees to restore the building. As stated, the clause which we have quoted from the lease was inserted to prevent the tenant being entirely discharged from having to pay rent under section 2297 of the Statutes if the building were destroyed by fire, providing the landlord elected to restore the building after such destruction. The word "destroyed" in the lease, therefore, should receive the same construction as the like word in the statute.

In the case of Sun Insurance Office v. Varble, 103 Ky. 758, 46 S. W. 486, 20 Ky. Law Rep. 556, 41 L. R. A. 792, the demised premises which had been erected at a cost of over $15,000 were partially destroyed by fire. The damage was fixed at $7,094.35. One feature of the case turned on the extent of the duty of the lessee, under his express covenant in the lease to keep the premises in repair. The extent of this duty, in turn, depended on how the express covenant in the lease was modified, if at all, by section 2297 of the Statutes, which, in substance, among other things, provides that, unless the contrary be expressly provided for in writing, a covenant on the part of the lessee to repair shall not obligate him to erect similar buildings, if, without his fault or neglect, they be destroyed by fire or other casualty. It was held that the word "destroyed" in the statute does not mean exclusively total destruction, but includes any case where the "fire or other casualty" injures the premises. In King & Metzger v. Cassell, 150 Ky. 537, 150 S. W. 682, 42 L. R. A. (N. S.) 774, the Varble case was quoted with approval and its principle followed. In this Cassell case, the court said that the word "destroyed" in the statute "applies as well to a partial as to a total destruction of the building." See, also, Thomas v. Conrad, 114 Ky. 841, 71 S.

W. 903, 74 S. W. 1084, 24 Ky. Law Rep. 1630, 25 Ky. Law Rep. 169.

In the instant case, there is no dispute in the evidence that the fire very substantially injured the demised premises. The lowest estimate of restoring it, conceding that it could be restored, was $5,000, and this left out the necessary wiring and plumbing. These items would have increased the estimate to over $7,000. As the premises were substantially destroyed, at least under the rule of the Varble case, the appellant, but for the quoted clause of his lease, would have been relieved from having to pay further rent or from having to restore the premises. The quoted clause of the lease gave the appellees the right, under the same circumstances as would have relieved the appellant from the lease, to declare the lease at an end or to restore the premises; the tenant being relieved of the rent during the time of the restoration. This being true, the appellees clearly had the right under the undisputed facts in this case, to declare the lease at an end. This they did, and hence they were not liable to the appellant as he claimed.

The lower court, therefore, did not err in peremptorily instructing the jury to find for the appellees, and its judgment is affirmed.