**Dallas C. MORRIS, Appellant,**

v.

**Ann L. DURHAM et al., Appellees.**

Court of Appeals of Kentucky.

June 27, 1969.

Charles R. Coy, Coy & Coy, Richmond, for appellant.

Eugene S. Wiggins, Robert L. Leeds, Richmond, for appellee.

STEINFELD, Judge.

Chester G. Luxon and his wife Lillian, on January 14, 1964, leased to Dallas C. Morris for a period of ten years a portion of a building on Main Street in Richmond, Kentucky. Chester died in 1966 and the ownership passed to his widow Lillian, his son William E. Luxon, and his daughter Ann L. Durham. The entire building, of which the leased premises were a part, was destroyed by fire on the 8th day of February, 1968. Morris was a tenant on that date. Two days later Morris was given written

---

notice that the lease was cancelled because of the destructive fire but he protested, claiming that the lease obligated the owners to rebuild. They refused to do so.

To settle the controversy the owners sued for a reformation of the lease, for a declaration that the lease was terminated and for damages " * * * in loss of rental caused by * * * wrongful claims and actions * * *" made and committed by Morris. He counterclaimed demanding that the court declare that it was the duty of the owners to rebuild within a reasonable time. The court held that the owners had the option to rebuild but were not required to do so, but if they rebuilt " * * * within a reasonable time" a " * * * building in substantially the same form it was in previous to the fire * * * said Lease will resume its binding effect upon the parties * * * from the date the rebuilt premises are ready for occupancy * * *." No damages were awarded and no reformation ordered. Tenant Morris appeals. We affirm.

Appellant makes only two arguments before us. He contends that "The language of the lease requires that appellees rebuild the premises" and that " * * * having elected to rebuild (they) cannot avoid the lease."

The lease contained two sections on which appellant relies, to wit:

"In the event said premises or any part thereof be destroyed or damaged by fire or other casualty so that the same shall thereby be rendered unfit for habitation or for the purposes herein designed, the rental herein above stipulated to be paid, or a just and proportionate part thereof, shall be suspended or abated until the premises shall have been by the Lessors rebuilt or repaired and put in proper condition for use and habitation, and the rental shall thereupon recommence immediately after the said rebuilding or repairing shall have been completed.

"The Lessor agrees to protect the building, together with the display window glass, the sufficient insurance policies, and in case of damage to the building by fire or by breakage of the windows or by any cause whatsoever, to make the necessary repairs at the earliest possible time, in order that the Lessee may not be inconvenienced longer than absolutely necessary. In case the Lessee is deprived of the use and occupancy of said building on account of damage by fire or flood, or any other cause beyond the control of the Lessee, then the Lessee shall not be required to pay to the Lessor the stipulated rental charges during that period."

He contends that this language indicated a clear intention " * * * that the leased premises would have to be rebuilt in the event of their destruction."

■ A lessor is not required to rebuild on substantial destruction by fire unless he is obligated to do so by the terms of the lease. Winter v. Taylor, 224 Ky. 827, 7 S. W.2d 209 (1928); 32 Am.Jur. 632, Landlord & Tenant, Sec. 750. In Davis v. Parker et al., 200 Ky. 847, 255 S.W. 836 (1923), we held the lessor did not have to rebuild a fire-destroyed building, the lease not imposing that obligation on him, although it contained the language requiring him to " * * * replace the buildings in the same condition as they now are * * *." Also see 32 Am.Jur. 521, Landlord & Tenant, Sec. 657.

■ The first quoted section of the lease is similar to a provision in the lease discussed in Columbia Amusement Co. v. Hughes, Ky., 375 S.W.2d 813, in which we held it did not create an obligation to rebuild after fire destroyed the leased premises. Neither paragraph expressed an agreement to rebuild after complete destruction. We find no error in the chancellor's declaration that the owners were not required to rebuild.

■ On April 3, 1968 the attorney for the owners wrote Morris' attorney that his clients were willing to construct a new

building in which Morris could become a tenant if he agreed to the proposed conditions. He did not accept. We do not interpret that letter as an election to rebuild. The judgment made proper provision for Morris in the event rebuilding occurs "* * * in substantially the same form as previously."

The judgment is affirmed.

All concur.